# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

## AT WILMINGTON

|  |  |
|---|---|
| MICHAEL R. RAY, | ) Civil Action 17 - 1331 |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) **C O M P L A I N T** |
| | ) (Jury Trial Demanded) |
| EQUIFAX, INC., and EQUIFAX | ) |
| INFORMATION SERVICES, L.L.C., | ) |
| | ) |
| Defendant(s). | ) |
| | ) |

Plaintiff Michael R. Ray ("Plaintiff") *pro se*, brings this action against EQUIFAX, INC. and EQUIFAX INFORMATION SERVICES LLC ("Defendants") and respectfully alleges the following:

## NATURE OF ACTION

1. Plaintiff Michael R. Ray brings this action to redress Defendants' failure to adequately safeguard personal identifying information and related data.

2. This action arises from what may be one of the largest data security breaches ever to occur in the United States.

3. As a result of this breach, Plaintiff and the millions of individuals whose sensitive personal data was made accessible now face substantial risk of further injury from identity theft, credit and reputational harm, false tax claims, or even extortion.

## PARTIES

4. Plaintiff Michael R. Ray is a citizen of South Carolina and resides in Horry County.

5. Defendant Equifax, Inc. is a global consumer credit reporting agency incorporated in Delaware, with its principal place of business at 1500 Peachtree Street NW, Atlanta, Georgia.

6. Equifax, along with Experian and TransUnion, is one of the three-largest credit-reporting firms in the U.S. The company organizes and analyzes data on more than 820 million consumers and more than 91 million businesses worldwide. Equifax's databases hold employee data submitted by more than 7,100 employers.

7. Equifax Information Services LLC operates as a subsidiary of Equifax Inc. and collects and reports consumer information to financial institutions. Equifax Information Services LLC is incorporated in Georgia with its principal place of business at 1500 Peachtree Street NW, Atlanta, Georgia.

8. Defendants do business nationwide, including in this District.

9. Upon information and belief, the wrongful acts and/or decisions by Defendants leading to this data breach occurred nationwide and in this District.

## FACTUAL ALLEGATIONS

10. On September 7, 2017, Defendants publicly disclosed a massive data security breach that affected approximately 143 million American consumers.

11. According to Defendants, the attack was carried out from mid-May to July 2017.

12. Equifax has stated that the cyberattack was discovered on July 29, 2017. Even though it discovered the attack in July, and despite the breadth and severity of the release, Equifax waited approximately six weeks before publicly announcing the breach.

13. Defendants admit that their U.S. website application had a security "vulnerability" that allowed third parties to access a vast amount of individual personal identifying information.

2

14. As a result of Defendants' actions, the Social Security numbers, birth dates, addresses and even driver's license numbers of millions of U.S. consumers were released. Hackers also gained access to credit-card numbers for approximately 209,000 consumers, as well as dispute records containing the personal identifying information of roughly 182,000 consumers.

15. None of the individuals whose personal information was compromised authorized such access or disclosure by Defendants.

16. Defendants themselves have stated that the data was accessed by – and therefore presumably is in the hands of – "criminals."

17. Defendants purport to be sophisticated companies with "industry expertise" in handling "trusted unique data," including the highly sensitive personal information of individual consumers like the Plaintiff.

18. Despite these representations, Defendants have been sued, investigated, and fined multiple times in recent years for fundamental flaws in their systems that store and handle personal consumer credit information.

19. After more than a month, Equifax established a website that allows U.S. Consumers to determine whether their data may have been compromised and enroll in free credit monitoring.

20. The website Equifax set up and directed consumers to use to check whether their personal information had been compromised was itself fraught with security risks. The site has a flawed Transport Layer Security implementation, and runs on free blogging software unsuitable for secure applications.

21. The site also asks consumers to provide their last name, as well as the last six digits of the social security numbers, without any assurance that that the information would be secure. It

3

fails to warn consumers to use a secure computer or encrypted network to transmit such sensitive information.

22. In fact, the site appears to generate the same responses regardless of whether a consumer enters valid or fictional information.

23. The site asks consumers to enroll in an Equifax product (TrustedID) that requires consumers to provide additional sensitive personal information.

24. In order to use the TrustedID free credit monitoring, the site also asks consumers to waive certain legal rights via an inconspicuous arbitration clause.

25. Upon information and belief, the wrongful acts and/or decisions by Defendants leading to this data breach occurred nationwide and in this District.

## JURISDICTION

26. This Court has original jurisdiction pursuant to 28 U.S.C.A. § 1332(d)(2), in that the matter in controversy, exclusive of interest and costs, exceeds the sum of $75,000 and the Plaintiff is the citizen of a state different from Defendants.

27. This Court has personal jurisdiction over Defendants because they conduct significant business in this District, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

28. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this jurisdiction. Defendants are authorized to do business in this District and are subject to personal jurisdiction in this District.

## COUNT I

## VIOLATION OF FAIR CREDIT REPORTING ACT ("FCRA")

4

29. Plaintiff incorporates by reference the allegations in the preceding paragraphs as if fully set forth herein.

30. Plaintiff is an individual consumer, within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

31. The personal information at issue was a "consumer report" within the meaning of the FCRA (15 U.S.C. § 1681a(d)) because the personal information was a communication of information that bears on the credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living of Plaintiff that was expected to be used or collected to serve as a factor in establishing Plaintiff's eligibility for credit.

32. Defendants are consumer reporting agencies within the meaning of the FCRA (15 U.S.C. § 1681e(a)) because they regularly engage, for monetary fees, in assembling and evaluating consumer credit information and other consumer information for the purpose of furnishing consumer reports to third parties, such as banks, cell phone carriers, and other lenders and retailers.

33. Under the FCRA, Defendants were required to maintain reasonable procedures that are designed to limit the furnishing of consumer reports to six circumstances ("purposes") identified at 15 U.S.C. § 1681b.

34. Defendants violated the FCRA by furnishing the personal information in various consumer reports to the unauthorized individuals or entities that accessed the personal information through the Equifax website, because furnishing consumer reports in such circumstances is not one of permitted the "purposes" under the FCRA. In addition, Defendants failed to maintain reasonable technological or other procedures designed to prevent such impermissible furnishing of consumer reports.

35. In view of Defendants' knowledge, experience, and expertise in consumer data security, prior failures in their systems, and the fact that the breach here was so vast, affected such core consumer information, and went on for so long without detection, it also is clear that Defendants acted willfully or recklessly in their failure to safeguard the personal information at issue here.

36. Defendants' willful and/or reckless violations of the FCRA provided the means for third parties to access, obtain, and misuse the personal information of Plaintiff without authorization and for purposes not permitted by the FCRA.

37. Defendants' violation of their duties under the FCRA constitutes a de facto injury to Plaintiff. In addition, Defendants' violation of the FCRA has direct and proximately injured Plaintiff, including by foreseeably causing him to expend time and resources investigating the extent to which his personal information has been compromised, taking reasonable steps to minimize the extent to which the breach puts on his credit, reputation, and finances at risk, and taking reasonable steps (now or in the future) to redress fraud, identity theft, and similarly foreseeable consequences of criminals obtaining the personal information of the Plaintiff and other consumers.

38. Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Plaintiff is entitled to recover actual damages, or statutory damages of not less than $100 and nor more than $1,000.

## COUNT II

## BREACH OF FIDUCIARY DUTY

39. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further allege as follows.

40. By virtue of their possession, custody and/or control of Plaintiff's personal information, and their duty to properly monitor and safeguard it, Defendants were, and continue to be, in a confidential, special and/or fiduciary relationship with the Plaintiff. As fiduciaries, Defendants owed, and continue to owe, Plaintiff:

> a) the commitment to deal fairly and honestly;

> b) the duties of good faith and undivided loyalty; and

> c) integrity of the strictest kind.

41. Defendants were, and continue to be, obligated to exercise the highest degree of care in carrying out their responsibilities to Plaintiff under such confidential, special and/or fiduciary relationships.

42. Defendants breached their fiduciary duties to Plaintiff by, inter alia, improperly storing, monitoring and/or safeguarding Plaintiff's personal information.

43. To the extent that Defendants are fiduciaries who did not breach the duties outlined above, Defendants are nonetheless liable because they had knowledge of the breaches of fiduciary duty committed by other fiduciaries, and did not make reasonable efforts under the circumstances to remedy such fiduciary breaches.

44. To the extent that Defendants are not fiduciaries, Defendants are nonetheless liable because they engaged in transactions with a breaching fiduciary under circumstances in which they knew, or should have known, about such fiduciary breaches.

45. Defendants breached their fiduciary duties to Plaintiff by their wrongful actions described above. Defendants willfully and wantonly breached their fiduciary duties to Plaintiff or, at the very least, committed these breaches with conscious indifference and reckless disregard of their rights and interests.

## COUNT III

### NEGLIGENCE

46. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

47. Defendants were, and continue to be, in confidential, special and/or fiduciary relationships with Plaintiff, by virtue of being entrusted with his personal information. At the very least, therefore, Defendants assumed a duty, and had duties imposed upon them by regulations, to use reasonable care to keep Plaintiff's information private and secure, including a duty to comply with applicable PCI data security standards, statutes and/or regulations.

48. Defendants also had a duty to timely inform Plaintiff of the breach and the fact that his personal information had been stolen and/or compromised, and, upon learning of the breach, a duty to take immediate action to protect Plaintiff from the foreseeable consequences of the breach. By their acts and omissions describes therein, Defendants unlawfully breached their duty, and Plaintiff was harmed as a direct result.

49. Defendants knew, or should have known, that their computer network for processing and storing consumers' personal information had security vulnerabilities. Defendants were negligent by continuing to accept, process and store such information in light of these computer network vulnerabilities and the sensitivity of the personal information stored within.

50. The breach, and the resulting damages suffered by Plaintiff, was the direct and proximate result of a number of actions and omissions, including but not limited to:

> a) Defendants' improper retention and storage of Plaintiff's personal information;
>
> b) Defendants' failure to use reasonable care to implement and maintain appropriate security procedures reasonably designed to protect such information;

8

c) Defendants' delay in notifying Plaintiff about the breach for more than a month, and

d) Defendants' failure to take immediate and effective action to protect Plaintiff from potential and foreseeable damage.

51. Defendants' wrongful actions constitute negligence.

52. When Defendants gathered and transmitted consumers' personal information, they came into the possession, custody and control of this sensitive information and as such, were and continue to be in confidential, special and/or fiduciary relationships with Plaintiff. At the very least, Defendants had a duty to monitor and safeguard such information to keep it private and secure, including a duty to ensure that Defendants complied with applicable PCI data security standards, statutes and/or regulations.

53. Defendants knew, or should have known, that their network for processing and storing consumers' personal information had security vulnerabilities. Defendants were negligent in continuing to process such information in light of those vulnerabilities and the sensitivity of the information.

54. The breach was a direct and/or proximate result of Defendants' failure to use reasonable care to ensure that they maintained appropriate security procedures reasonably designed to protect Plaintiff's personal information. Defendants' wrongful conduct constitutes negligence.

55. Plaintiff has not in any way contributed to the security breach or the compromise or theft of his personal information. After learning of the data breach, Plaintiff immediately visited www.Equifax.com and followed the instructions thereupon to determine whether or not he was an affected party of the data breach.

a) the Equifax website indicated that "[b]ased on the information provided, we believe that your personal information may have been impacted by this incident;" b) the Plaintiff followed the instructions provided on Defendant(s) website, and continued to the next page directed;

c) after entering all of his personal information he was informed to "revisit the site after September 11, 2017 for directions to register for "trusted premier;" d) Plaintiff repeatedly visited the site *after* September 11, 2017 to no avail, and e) On September 19, 2017, Plaintiff again started the process all over and received similar indicators from the web site. Those documents are attached hereto, marked as "Exhibit A."

56. On September 19, 2017, Plaintiff learned that not only had the originally reported data breach in July occurred but it had been disclosed by various news media outlets that yet another breach (albeit unreported) took place in March of 2017. It had also been earlier disclosed that three prominent Equifax executives had sold nearly two million dollars in Equifax stock just days after the reported breach in July. As a result of these allegations, the companies C.I.O and its chief security officer "retired" this week (See articles marked as "Exhibit B" attached hereto).

## COUNT IV

### NEGLIGENCE PER SE

57. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

58. Pursuant to the Gramm-Leach-Bliley Act (the "Act"), 15 U.S.C. § 6801, Defendants had a duty to protect and keep consumers' personal information secure, private and confidential.

59. Defendants violated the Act by not adequately safeguarding Plaintiff's Sensitive Personal Information; and monitoring and ensuring that Defendants complied with PCI data security standards, card association standards, statutes and/or regulations designed to protect such information.

60. Defendants also failed to comply with PCI data security standards, statutes and regulations prohibiting the storage of unprotected personal information.

61. Defendants' failure to comply with the Act, industry standards and/or regulations constitutes negligence per se.

## COUNT V

## BREACH OF CONTRACT

62. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

63. Plaintiff was a party to actual or implied contracts with Defendants that required Defendants to properly safeguard his personal information from theft, compromise and/or unauthorized disclosure.

64. Additionally, Plaintiff was a third-party beneficiary to contracts and/or agreements by and between Defendants and other institutions and networks. These agreements required Defendants to properly safeguard personal information from theft, compromise and unauthorized disclosure.

65. Defendants breached their agreements with Plaintiff by failing to properly safeguard personal information from theft, compromise and/or unauthorized disclosure. Defendants' wrongful conduct constitutes breach of contract.

## COUNT VI

### BAILMENT

66. Plaintiff incorporates each paragraph of this Complaint as if set forth fully here, and further alleges as follows.

67. Plaintiff's personal information is his personal property, which he delivered to Defendants for the sole and specific purpose of compiling and/or transmitting credit information.

68. Defendants accepted Plaintiff's personal information. As a bailee, Defendants owed a duty to Plaintiff and, in fact, had an express and/or implied contract with him, to properly protect his personal information from theft, compromise and/or unauthorized disclosure.

69. Defendants breached their duty and/or express and implied contracts with Plaintiff by, inter alia, improperly storing and inadequately protecting his personal information from theft, compromise and/or unauthorized disclosure, which directly and proximately caused Plaintiff to suffer damages.

70. Defendants' wrongful actions constitute breaches of their duty to (and/or express and/or implied contracts) with Plaintiff arising from the bailment.

### REQUESTED RELIEF

71. As a direct and/or proximate result of Defendants' wrongful conduct, Plaintiff has sustained, and will continue to sustain, damages in the form of:

> a) the unauthorized disclosure and/or compromise of his personal information;
>
> b) possible monetary losses and damage to credit from fraudulent charges made on his accounts; and
>
> c) the burden and expense of credit monitoring.

72. Plaintiffs' damages were reasonably foreseeable by Defendants.

12

73. Plaintiff is entitled to equitable relief to prevent any additional harm including, but not limited to, provision of credit monitoring services for a period of time to be determined by the trier of fact.

74. Plaintiff is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs.

**W H E R E F O R E**, Plaintiff, respectfully request that this Court:

A. Enter judgment in favor of Plaintiff against Defendants under the legal theories alleged herein;

B. Award damages and/or equitable relief in an amount to be determined by the trier of fact;

C. Award attorneys' fees, expenses and costs of suit;

D. Award pre-judgment and post-judgment interest at the maximum rate allowed by law; and

E. Such other and further relief as to this Court may deem necessary, just and proper.

## JURY TRIAL DEMANDED

Plaintiff, respectfully demand a trial by jury on all the claims and causes of action so triable.

Dated: September 19, 2017

Respectfully submitted,

By:_____

MICHAEL R. RAY, *pro se*
Post Office Box 100
Myrtle Beach, South Carolina 29578-0100
Phone: (843) 448-1515
Fax: (843) 712-7275
E-mail: Mike@MyFedLaw.com

13

# Ray v. Equifax

# "Exhibit A"

(https://www.equifax.com)

# Thank You

Based on the information provided, we believe that your personal information may have been impacted by this incident.

Click the button below to continue your enrollment in TrustedID Premier.

Enroll

For more information visit the FAQ page. (https://faq.trustedidpremier.com)



© 2017 Equifax Inc. All rights reserved

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other product and company names mentioned herein are the property of their respective owners.

Privacy Policy (https://trustedidpremier.com/static/privacy-policy) | Terms of Use (https://trustedidpremier.com/static/terms)

(https://www.equifax.com)

# Thank You

We have successfully received and are processing your information.

### Next Step

You will receive an email with a link to finalize your enrollment and activate your product. Please be patient. Due to the high volume of requests, emails may be delayed. If you have not received your email within a few days, please check your spam and junk folders.

Thank you again; we appreciate your patience!

© 2017 Equifax Inc. All rights reserved

Equifax and the Equifax marks used herein are trademarks of Equifax Inc. Other product and company names mentioned herein are the property of their respective owners.

Privacy Policy (https://trustedidpremier.com/static/privacy-policy) | Terms of Use (https://trustedidpremier.com/static/terms)

# Ray v. Equifax

# "Exhibit B"

# BUSINESS INSIDER

## 2 top Equifax execs are out after a massive hack that exposed 143 million Americans' financial data

 **BRYAN LOGAN**
SEP. 15, 2017, 5:57 PM

Equifax's top information-security executives are leaving the credit-reporting company after a data breach that exposed the personal financial information of 143 million Americans.

The consumer-data firm's CIO, David Webb, and its chief security officer, Susan Mauldin, are "retiring" a week after Equifax announced the cyber attack that has been called one of the worst such data breaches in US history.



FILE PHOTO: Credit reporting company Equifax Inc. offices are pictured in Atlanta

*Thomson Reuters*

Webb will be replaced by Mark Rohrwasser, who joined the company last year, Equifax said in an emailed statement. Mauldin will be replaced by Russ Ayres. Both Rohrwasser and Ayers have previously worked in Equifax's IT division.

The hack occurred between mid-May and July, Equifax said when it first disclosed the break in last week.

The company said criminals had accessed details including names and social security numbers. Credit card numbers for about 209,000 people, and certain documents for another 182,000 were also accessed. Equifax has set up a website to help people figure out if they are among those whose information was compromised.

The company said there was no evidence of a breach into its core consumer or commercial credit reporting databases, and has since admitted that the source of the breach was a software flaw that could have been prevented.



Three Equifax executives sold nearly $2 million in company stock just days after the breach.

The company said the executives "had no knowledge" of the incident beforehand, according to an emailed statement from the credit-monitoring agency.

Some US lawmakers have called for an investigation of the breach, with Equifax's CEO expected to testify before Congress over the matter, and the company's shares have plunged in the days since it was disclosed.

The breach could be one of the biggest in the United States, Reuters reported. Last December, Yahoo said more than one billion user accounts were compromised in August 2013, while in 2014 eBay had urged 145 million users to change their passwords following a cyber attack.

# The Washington Post

**The Switch**

# Equifax suffered another data breach in March

**By Hamza Shaban** September 18 at 9:25 PM

Equifax suffered another major breach before the massive data breach disclosed earlier this month, the company confirmed Monday, revealing yet again the vulnerability of the credit agency's computer systems.

The earlier breach, first reported by Bloomberg, was discovered by Equifax in March. But the company said that the earlier intrusion was unrelated to the breach that may have impacted as many as 143 million people, which the company discovered in July but did not disclose until six weeks later.

"Equifax complied fully with all consumer notification requirements related to the March incident," Equifax said in a statement. "The two events are not related."

Equifax did not offer any details about the information that may have been stolen, or how many people may have been affected. It's possible the hackers behind the March attack were seeking a way into the networks of major banks, using Equifax as a point of entry, according to Bloomberg. In both incidents, the company hired the cybersecurity firm Mandiant to investigate.

The disclosure of a second major breach is likely to spark intensified scrutiny from consumers and lawmakers, who have already expressed frustration over the company's security lapses and its handling of events after the July breach was made public. At least two congressional hearings are slated for the coming weeks. And Equifax faces multiple federal investigations on the breach as well as over reports that executives sold an unusual amount stock before the July hack was disclosed. Last week, two officials responsible for Equifax's security and information technology abruptly retired.

**Read more:**

Two Equifax executives will retire following massive data breach

The FTC is investigating the Equifax breach. Here's why that's a big deal.

I called Equifax with a simple question. This is what happened.

## 💬 3 Comments

Hamza Shaban covers tech news for The Washington Post. Prior to joining The Post, he worked at Buzzfeed, where he covered tech policy for the past two years, writing about antitrust, free speech, surveillance, cybersecurity and the tension between privacy and security interests.
🐦 Follow @hshaban

### Sign in to join the conversation

**Comments**      My profile

Comments on this page are powered by new software that we're creating in partnership with The Coral Project.

Our latest update includes improvements to My Profile and the ignore function. Learn more about what's new and what's coming here.

You can email feedback to comments@washpost.com. Otherwise, comment below as usual.

**Please read the rules in place before joining the discussion.**

**All Comments** 3                                          Viewing Options ▾



**pts** 1 hour ago

So this is what a free market brings us, eh: a "data" organization that harvests
data from individuals who did not choose the company and have no control

fedex.com 1.800.GoFedEx 1.800.463.3339

**FedEx** Express

**Package** US Airbill

**1 From**

Date 9/19/17

Sender's Name Michael Clay

Company L.S.S.

Address 505 N. knapp Hwy Myrtle Black

City Myrtle Black   State SC   ZIP 29578

FedEx Tracking Number 8102 6184 6118

Phone 813 448 1515

**2 Your Internal Billing Reference**

**3 To**

Recipient's Name Clerk of Court

Company United State District Court

Address 844 N. State St Unit 18

City Wilmington   State DE   ZIP 19801

Phone 302 573 6170

Dept/Floor/Suite/Room

☐ Hold Weekday
☐ Hold Saturday

8102 6184 6118

**4 Express Package Service** *To most locations.*

☐ Next Business Day

☐ FedEx First Overnight
☐ FedEx Priority Overnight
☑ FedEx Standard Overnight
☑ FedEx 2Day A.M.
☐ FedEx 2Day
☐ FedEx Express Saver

**5 Packaging** *Declared value limit $500.*

☑ FedEx Envelope*   ☑ FedEx Pak*   ☐ FedEx Box   ☐ FedEx Tube   ☐ Other

**6 Special Handling and Delivery Signature Options**

☑ No Signature Required
☐ Direct Signature
☐ Indirect Signature

Does this shipment contain dangerous goods?

☐ No   ☐ Yes   ☐ Yes   ☐ Cargo Aircraft Only

**7 Payment** Bill to:

☑ Sender   ☐ Recipient   ☐ Third Party   ☑ Credit Card   ☐ Cash/Check

Total Packages   Total Weight

Rev. Date 3/15 • Part #167002 • ©2012–2015 FedEx • PRINTED IN U.S.A.

**FedEx.**
0200 8102 6184 6118

XB ZWIA

FT 281811 19SEP17 FLOA 546C1/FF19/RCOA

WED – 20 SEP AA
STANDARD OVERNIGHT

19801
DE-US
PHL